**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **AMERICAN LEATHER OPERATIONS, LLC**<br>**and TIFFANY & TIFFANY DESIGNERS, INC.,** | |
| **Plaintiffs,** | Civil Action No. _____ |
| **v.** | **COMPLAINT**<br>**(Jury Trial Demanded)** |
| **ULTRA-MEK, INC.** | |
| **Defendant.** | |

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW Plaintiffs American Leather Operations, LLC and Tiffany & Tiffany Designers, Inc., (collectively referred to herein as "Plaintiffs") complaining of Ultra-Mek, Inc. and would show the Court as follows:

**I.**
**THE PARTIES**

1.      Plaintiff American Leather Operations, LLC ("American Leather") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 4501 Mountain Creek Parkway, Dallas, Texas 75236. American Leather is the successor-in-interest to rights held by American Leather, Inc., for purposes of the rights asserted herein.

2.      Plaintiff Tiffany and Tiffany Designers, Inc. ("Tiffany") is a corporation incorporated under the laws of the Commonwealth of Pennsylvania with a principal place of business at 27 Cafferty Road, Point Pleasant, Pennsylvania 18950.

3.     Defendant Ultra-Mek, Inc. ("Ultra-Mek") is a corporation incorporated under the laws of the State of North Carolina having its principal place of business at 487 Bombay Road, Denton, North Carolina, 27239. Ultra-Mek engages in business in Dallas County, Texas, but upon information and belief does not maintain a regular place of business in this state or a designated agent for service of process for proceedings that arise out of Ultra-Mek's business done in this state. Ultra-Mek may therefore be served with citation by certified mail, return receipt requested, addressed to:

> David S. Hoffman
> President and North Carolina Registered Agent
> 487 Bombay Road
> Denton, North Carolina 27239

## II.
## JURISDICTION AND VENUE

4.     This action arises under the Patent Act, 35 U.S.C. § 101 *et seq.* This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331, 1338(a), and 1367.

5.     This Court has personal jurisdiction over Ultra-Mek pursuant to, at the least, Texas Civil Practice & Remedies Code §§ 17.042(1) and (2), as Ultra-Mek has engaged in business in Dallas County, Texas, or committed a tort, in whole or in part, in Dallas County, Texas, and the claims made herein arise out of such activities. Further, upon information and belief, Ultra-Mek has also sold and distributed infringing products into the stream of commerce in the United States with the reasonable belief and expectation that such products would periodically flow into Texas.

6.     Venue is proper in the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. §§ 1391(b) or 1400.

2

**III.**
**FACTS**

**I. Factual Allegations of American Leather's and Tiffany's Business**

7. Based in Dallas since its founding in 1990, American Leather designs and manufactures leather and fabric upholstered furniture which it markets and sells to both wholesale and retail customers. American Leather's products include 130 different collections sold in over 650 stores, including Room and Board, Crate and Barrel, Macy's, Bloomingdales, Design Within Reach, and Haverty's.

8. American Leather is well known as a leading U.S.-based furniture company, specializing in providing highly crafted and customized leather and fabric upholstered seating with industry leading turnaround. Making use of proprietary leather nesting systems and manufacturing techniques, American Leather has experienced tremendous success and earned enviable goodwill in the industry.

9. Innovation has always been integral to American Leather's success, and the company has achieved or been awarded over 15 issued patents and registered trademarks, as well as numerous copyrights.

10. In 1999, Tiffany brought to American Leather a convertible mechanism called the Tiffany 24/7™ (also known as the "Tiffany Convertible Mechanism"). American Leather partnered with Tiffany to develop a high-end sleeper sofa incorporating the Tiffany Convertible Mechanism and having superior sleeper comfort. The resulting product is known today as the Comfort Sleeper™ sofa bed. Both American Leather and Tiffany created several improvements on the Tiffany Convertible Mechanism over time, such as bed height, mattress length, improvements on the legs, and improved mechanical geometry.

Case 1:14-cv-00295-CCE-LPA   Document 1   Filed 11/08/13   Page 3 of 27

11.     Based upon its specialized and proprietary knowledge of its customer base, American Leather made critical determinations regarding the product characteristics of the Comfort Sleeper™ product, including without limitation: determining the widths to be offered, mattress length and thickness, particular engineering of the mattress support sections, overall dimensions of the items of furniture (sofa, chair, back cushion height, seat cushion height and depth), method of attachment of back cushions (via zipper and a novel insert system) and seat cushions, a seat cushion cap system to allow lower seat cushion height, and various aspects of mattress engineering (including engineering, methods of attachment, and testing of the type of foam and flame retardant barrier wraps). American Leather also performed sophisticated and proprietary testing on the Comfort Sleeper™ products, including cycle testing on the mechanisms, formulating repetition and boundary characteristics based upon its knowledge and experiences, static testing, and regulatory compliance. American Leather's testing resulted in additional improvements being made to the Comfort Sleeper™ sofa bed, including improvements to the mechanism. Throughout this process, American Leather, at great time and expense, tested and rejected several proprietary alternatives it deemed less than optimal.

12.     Over the past 13 years, Comfort Sleeper™ products have gained substantial market penetration and recognition for their ingenuity and comfort. Comfort Sleeper™ products have, at the least, the following unique attributes: (1) multiple separate bed sections, each of which rests on a solid base; (2) opens in one fluid motion as opposed to a two-step process, which is typical of most existing sofa bed mechanisms; (3) when open, the "head" of the mattress begins immediately proximate to the sofa back (see image below), rather than in front of the back cushions as in typical sleeper-sofas where there is a substantial distance (approximately 12"–18") between the sofa back and the mattress; (4) the "head" section is pulled into place by

4

the movement of the "front" sections; and (5) when opened, the bed height is a standard bed height. An example of an American Leather® Comfort Sleeper™ sofa bed is shown below:



The New Comfort Sleeper" from American Leather

13.     In addition, American Leather owns all right, title, and interest to U.S. Patent No. 6,904,628 ("the '628 Patent") and U.S. Patent No. 8,011,034 ("the '034 Patent") relating to the field of convertible furniture.

14.     The subject matter disclosed and claimed in the '628 and '034 Patents was created with input from Marcus Murphy, who, on information and belief, was and is an Ultra-Mek employee, and D. Stephen Hoffman, a principal of Ultra-Mek. With the consent of Ultra-Mek, and pursuant to the Agreement (defined below) and understanding of the Parties, Messrs. Murphy and Hoffman assigned their interest in the '628 and '034 Patents to American Leather. A copy of the '628 Patent is filed herewith as **Exhibit A**.

15.     American Leather has additional pending U.S. patent applications relating to the field of convertible furniture, including U.S. Patent Application Nos. 13/653,945 and 14/052,186.

16.     Throughout the development, testing, and marketing of American Leather's Comfort Sleeper™ products, American Leather developed trade secret and confidential information, including exclusive know-how, detailed information about the engineering of the

5

products, and specific and unique information about the existing and potential market for the Comfort Sleeper™ products.

17. American Leather takes and, at all times relevant to this action, has taken efforts that are reasonable under the circumstances to maintain the secrecy of its confidential and highly sensitive business information. These steps include:

a. Labeling parts drawings as "proprietary and confidential" and additional language indicating that that information contained therein is the property of American Leather.

b. Executing nondisclosure and/or confidentiality agreements with its suppliers and vendors, including with Ultra-Mek.

c. Implementing employment agreements that notifies the employee of the existence of and restrictions on American Leather's confidential information, including agreements regarding the work done at American Leather on American Leather's Comfort Sleeper™ products.

d. Implementing nondisclosure agreements with Tiffany & Tiffany regarding development of convertible sleeper mechanisms.

e. Implementing nondisclosure and assignment agreements with third parties regarding development of improvements on American Leather's Comfort Sleeper™ products.

f. Maintaining secure manufacturing and document storage facilities (including electronic data storage).

18.     Through its relationship with Ultra-Mek and pursuant to the Agreement (defined below), American Leather disclosed certain confidential and highly sensitive business information to Ultra-Mek. This included:

    a.  Confidential parts, construction, and assembly information pertaining to development, construction and refinement of sofa beds and convertible sleeper mechanisms in American Leather® Comfort Sleeper™ products. This information resulted in changes to the look, design, and function of the convertible sleeper mechanisms that Ultra-Mek produced for American Leather.

    b.  Confidential requirements and preferences of hospitality customers, including size, shape, and durability of convertible sleepers for the hospitality industry.

    c.  Confidential feedback from customers and potential customers regarding American Leather® Comfort Sleeper™ products that incorporated derivations of the Tiffany Convertible Mechanism.

    d.  Confidential and valuable information about American Leather's customers, including details of the relationship with the customer and the volume of particular products sold to American Leather's customers.

    e.  Access to American Leather's confidential and secure manufacturing and research and development facilities on multiple occasions.

## II. Factual Allegations Regarding the Convertible Furniture Market

19.     American Leather introduced the Comfort Sleeper™ product using the Tiffany Convertible Mechanism in June 2000 at the San Francisco, California furniture market.

7

20.     Comfort Sleeper™ products using the Tiffany Convertible Mechanism are one of several types of convertible furniture designed to transition from a seating surface to a sleeping surface.

21.     American Leather must compete against other convertible furniture products. There is significant inter-brand competition between American Leather's Comfort Sleeper™ products and other convertible furniture products.

### III. Factual Allegations Regarding Ultra-Mek's Business

22.     Ultra-Mek historically has primarily designed and manufactured, among other things, metal hardware and assembled metal mechanisms for use predominately in recliners and similar products.

### IV. Factual Allegations Regarding the Relationship Between American Leather, Tiffany and Ultra-Mek

23.     American Leather approached Ultra-Mek to determine if Ultra-Mek would like to manufacture mechanisms created by American Leather that were based on the Tiffany Convertible Mechanism (hereinafter the original and derivatives of this mechanism are referred to as the "Tiffany Convertible Mechanism"). Through various discussions with American Leather, Ultra-Mek agreed to work with American Leather to manufacture the hardware components of what became the mechanism used in American Leather's Comfort Sleeper™ products. Prior to this date, on information and belief, Ultra-Mek did not produce any hardware for convertible sofa mechanisms or sofa beds. The records at the United States Patent and Trademark Office support this conclusion as there does not appear to be any patents or patent applications owned by Ultra-Mek for convertible sofa mechanisms until after Ultra-Mek began working with American Leather.

8

24.     In connection with discussions between Tiffany, American Leather, and Ultra-Mek, on February 15, 2000, Ultra-Mek entered into an agreement with American Leather and Tiffany (the "Development Agreement") and specifically agreed that:

> [a]ll information received or learned by Ultra-Mek … on the subject of the [ ] Tiffany Convertible Concept is confidential.
>
> * * *
>
> The Convertible Mechanism … and all changes, improvements, additions and derivations thereof are the sole property of [Tiffany] …
>
> Component parts, as developed by [Tiffany] and [American Leather] are owned jointly by these two companies.
>
> **Ultra-Mek agrees there will be no disclosure or sale of the mechanism, any derivations thereof,** or any of its component parts to any person, company, or entity other than [Tiffany] or [American Leather] … for the term of its license. (emphasis added)

25.     Also in connection with the Development Agreement, on March 5, 2001, Ultra-Mek entered into a Development and Tooling Ownership Agreement with American Leather (the "Tooling Agreement") whereby Ultra-Mek again agreed that:

> [t]here will be **no disclosure or sale of the Tiffany Convertible Mechanism, any derivations thereof,** or any of its component parts to any person, company, or entity other than American Leather without the prior written consent of American Leather. (emphasis added)

The Development Agreement and Tooling Agreement are collectively referred to herein as the "Agreement."

26.     Tiffany and American Leather have protectable interests supporting the terms in the Agreement, including without limitation, their confidential and trade secret information in and surrounding their highly successful Tiffany Convertible Mechanism and Comfort Sleeper™ sofa beds. Such information was shared with Ultra-Mek in order to develop Ultra-Mek as a trusted supplier to American Leather. In reliance on Ultra-Mek's promises in the Agreement,

9

American Leather did not seek other suppliers to provide the Tiffany Convertible Mechanism and derivations thereof.

27.     Instead, and in reliance on Ultra-Mek's promises in the Agreement, American Leather made Ultra-Mek its exclusive manufacturer for certain components of the Tiffany Convertible Mechanism for a period of time and provided Ultra-Mek with access to the Tiffany Convertible Mechanism as well as confidential and proprietary information.

28.     In reliance on the Agreement, American Leather provided confidential and proprietary information about American Leather's Comfort Sleeper™ products to Ultra-Mek, including, without limitation: confidential non-public information concerning American Leather's customers, assembly methods and sequences of assembly; tolerances and strength requirements of various sections of the products; testing methods and results, including static load and cycle testing; unpublished objective of the hospitality industry; negative know-how relating to assembly methods and components; market size and volume of sales; and other improvements, additions and derivations that would contribute to the success of the Tiffany Convertible Mechanism and any derivations thereof.

29.     American Leather paid approximately $85,000 initially in tooling and engineering costs to allow Ultra-Mek to more efficiently manufacture certain components of the Tiffany Convertible Mechanism.  In exchange, Ultra-Mek agreed that Plaintiffs would own all changes, improvements, additions and derivations of the Tiffany Convertible Mechanism. Thereafter, on subsequent derivations of the Tiffany Convertible Mechanism, American Leather paid over an additional $200,000 in tooling costs to allow Ultra-Mek to manufacture those derivations.

10

30.     Derivations of the Tiffany Convertible Mechanism were made over time, driven largely by the knowledge of American Leather, including the requirements of the hospitality industry along with various mechanical improvements.

31.     Prior to the facts giving rise to this lawsuit, Ultra-Mek acted in accordance with the Agreement. For example, the '628 and '034 Patents represent derivations made in part by Ultra-Mek to the original Tiffany Convertible Mechanism in order to help American Leather refine the Tiffany Convertible Mechanism. Ultra-Mek assigned rights in the inventions disclosed and claimed the '628 and '034 Patents to American Leather pursuant to the terms of Agreement.

## V.  Wrongful Acts of Ultra-Mek

32.     Then, in violation of the Agreement, on or about October 19, 2013, American Leather discovered that Ultra-Mek had disclosed and sold an unauthorized derivation of the Tiffany Convertible Mechanism (the "Unauthorized Comfort Sleeper Derivation" or "Unauthorized Comfort Sleeper Derivative") to several manufacturers at the Fall 2013 High Point North Carolina Furniture Market (the "High Point Market"). These manufacturers compete with American Leather in the Convertible Furniture market and are referred to herein as "Competing Vendors." A photograph of a sofa bed containing Ultra-Mek's Unauthorized Comfort Sleeper Derivative mechanism is shown below:



11

33.     The High Point Market is the largest furniture related wholesale market in the world with approximately 100,000 people attending the show as retail store owners, buyers, or exhibitors. The High Point Market occurs only twice a year and is approximately one week long.

34.     On information and belief, Ultra-Mek has represented to potential customers that it, not Plaintiffs, owns the Unauthorized Comfort Sleeper Derivative.

35.     On information and belief, Ultra-Mek and Competing Vendor's sales forces are promoting and selling products containing the Unauthorized Comfort Sleeper Derivative to their own customers as well as to American Leather's current and prospective customers and, also on information and belief, that at least one sales representative of a Competing Vendor is representing that the products contain the same mechanism as American Leather's Comfort Sleeper™ products.

36.     American Leather met with Ultra-Mek during the fall 2013 High Point Market and at that meeting Ultra-Mek asserted ownership of the Unauthorized Comfort Sleeper Derivative.

37.     In further violation of their duty under the Agreement to convey ownership of derivatives to Tiffany, and unbeknownst to American Leather or Tiffany, Ultra-Mek applied for and was granted U.S. Patent No. 7,549,182 ("the '182 Patent") on a first Comfort Sleeper derivation. Also unbeknownst to American Leather, Ultra-Mek then applied for and obtained U.S. Patent No. 8,438,676 ("the '676 Patent") on a second Comfort Sleeper derivation. In addition, and also unbeknownst to American Leather, Ultra-Mek filed another application, U.S. Patent Application No. 12/505,697 ("the '697 Application"), also on the second Comfort Sleeper derivation (collectively the patents and patent applications are referred to as the "Ultra-Mek Patent Properties").

**V.      Resulting Harm**

38.      These acts harm Plaintiffs as follows:

39.      Derivations of the Tiffany Convertible Mechanism are the property of Plaintiffs and Ultra-Mek has no right to own, disclose or sell any derivatives of the Tiffany Convertible Mechanism.

40.      The claimed ownership and sale by Ultra-Mek of any derivations to the Tiffany Convertible Mechanism is specifically prohibited by the Agreement.

41.      Ultra-Mek has misappropriated American Leather's confidential and proprietary information in order to provide derivatives of the Tiffany Convertible Mechanism to American Leather's competitors.

**IV.**
**CAUSES OF ACTION**

**COUNT ONE: PATENT INFRINGEMENT**

42.      Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

43.      Pursuant to 35 U.S.C. §271(c), Ultra-Mek has offered to sell, has sold, and is selling within the United States a component of a patented manufacture constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of American Leather's rights in the '628 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

44.      Specifically, Ultra-Mek is selling derivatives of the Tiffany Convertible Mechanism that are components used by Competing Vendors in the manufacturer of convertible sofa beds that, by utilizing Ultra-Mek's mechanisms, directly infringe one or more claims of the '628 Patent; namely, and without limitation, the Paragon Sleeper, 7700 Somerset Series, offered

13

for sale by Lazar Industries, LLC ("Lazar") as displayed at the website www.lazarind.com/paragonsleeper.html (last visited Nov. 7, 2013), copies of which are filed herewith as **Exhibit B**.

45.     Ultra-Mek had and currently has full knowledge of the '628 Patent by way of the fact that Marcus L. Murphy, who, upon information and belief, is an Ultra-Mek employee, was involved in the invention of the subject matter disclosed and claimed in the '628 Patent and Mr. Murphy assigned his rights in the invention to American Leather.

46.     Ultra-Mek knew and currently knows that the derivative Tiffany Convertible Mechanisms that it has sold and is selling are especially made and adapted for use in an infringing sofa bed and that third party Competing Vendors, including but not limited to Lazar, are manufacturing and selling infringing sofa beds.

47.     Based on Ultra-Mek's relationship with American Leather, as discussed above and its knowledge of the '628 Patent, Ultra-Mek was and is fully aware that the combination of (a) its derivative of the Tiffany Convertible Mechanism and (b) a convertible sofa bed especially designed for the Ultra-Mek mechanism was both patented and infringing.

48.     Ultra-Mek's contributory infringement has been willful, intentional, and deliberate with knowledge of and conscious disregard of American Leather's rights in the '628 Patent.

49.     Ultra-Mek's infringement has caused and will continue to cause damage to American Leather unless Ultra-Mek's infringing activities are enjoined by this Court.

## COUNT TWO: BREACH OF CONTRACT

50.     Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

51.     The Development Agreement and the Tooling Agreement are valid, enforceable contracts between Ultra-Mek, on the one hand, and American Leather and Tiffany, respectively, on the other hand.

52.     Ultra-Mek breached the Development Agreement and the Tooling Agreement by disclosing a change, improvement, addition or derivation of the Tiffany Convertible Mechanism, namely the Unauthorized Comfort Sleeper Derivative, to parties other than American Leather or Tiffany as detailed above.

53.     Ultra-Mek breached the Development Agreement and the Tooling Agreement by selling a change, improvement, addition or derivation of the Tiffany Convertible Mechanism, namely the Unauthorized Comfort Sleeper Derivative, to parties other than American Leather or Tiffany as detailed above.

54.     Ultra-Mek further breached the Development Agreement and the Tooling Agreement by claiming ownership of a change, improvement, addition or derivative of the Tiffany Convertible Mechanism as detailed above.

55.     Ultra-Mek further breached the Development Agreement and the Tooling Agreement by filing for and, in some instances, obtaining the issuance of patents in the Ultra-Mek Patent Properties, and claiming ownership of derivatives of the Tiffany Convertible Mechanism.

56.     The breaches committed by Ultra-Mek are material as they substantially defeat the purpose of the agreements: to prevent Ultra-Mek from using the proprietary Tiffany

15

Convertible Mechanism and derivatives thereof to an unfair advantage and/or with the purpose of selling the same or similar products to American Leather's and/or Tiffany's customers and/or competitors.

57.     Ultra-Mek has profited from its breach of contract in that it has attempted to divert customers of American Leather to Competing Vendors and has damaged American Leather's goodwill and reputation through the sale and/or disclosure of a change, improvement, addition or derivation of the Tiffany Convertible Mechanism, rightfully belonging to American Leather and Tiffany.

58.     American Leather and Tiffany have been damaged by Ultra-Mek's breach of contract in an amount to be more fully demonstrated at trial, for which American Leather and Tiffany sue. American Leather and Tiffany also request the imposition of a constructive trust over the Ultra-Mek Patent Properties, and any continuation or divisionals thereof as well as any patents or patent applications, domestic or otherwise, in which Ultra-Mek has an ownership and which claim the Tiffany Convertible Mechanism or any derivations thereof. Further, American Leather and Tiffany request specific performance of the Agreement, including, but not limited to, assignment of the Ultra-Mek Patent Properties to American Leather and/or Tiffany as well as any continuation or divisionals thereof as well as any patents or patent applications, domestic or otherwise, in which Ultra-Mek has ownership and which claim the Tiffany Convertible Mechanism or any derivatives thereof.

**COUNT THREE: SPECIFIC PERFORMANCE AND CONSTRUCTIVE TRUST**

59.     Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

Case 1:14-cv-00295-CCE-LPA   Document 1   Filed 11/08/13   Page 16 of 27

60. Money damages alone for the violation of American Leather's and Tiffany's rights under the Agreement would be an inadequate remedy because Ultra-Mek's breach has resulted in the issuance of patents in the Ultra-Mek Patent Properties which would purport to give Ultra-Mek exclusive rights in derivations of the Tiffany Convertible Mechanism for the life of the patent. Of Ultra-Mek's Patent Properties, the '697 Application, which, if granted, would result in an additional issued patent in Ultra-Mek's name purporting to give Ultra-Mek additional exclusive rights in a Tiffany Convertible Mechanism derivative. Additionally, on information and belief, the damages caused by Ultra-Mek's breach (*i.e.* – claiming ownership of a change, improvement, addition or derivative of the Tiffany Convertible Mechanism as detailed above, and by bringing such change, improvement, addition or derivative to market) has caused and will continue to cause an ongoing damage that can only be remedied, in part, by assignment of the Ultra-Mek Patent Properties to their rightful owners, and relief precluding Ultra-Mek from continuing to market any derivatives of the Tiffany Convertible Mechanism as its own. Therefore, a proper, appropriate and adequate remedy for the violation of American Leather and Tiffany's rights would include compelling Ultra-Mek to specifically perform their obligations under the Agreement. Plaintiffs therefore respectfully request the Court enter judgment requiring Ultra-Mek to specifically perform all of their obligations as set forth in the Agreement. American Leather and Tiffany further request that this Court impose a constructive trust on the Ultra-Mek Patent Properties; award Plaintiffs injunctive relief, requiring the assignment of the Ultra-Mek Patent Properties to American Leather and/or Tiffany; and excluding Ultra-Mek from marketing, disclosing and selling any derivatives of the Tiffany Convertible Mechanism.

17

## COUNT FOUR: TRADE SECRET MISAPPROPRIATION

61.     Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

62.     Ultra-Mek learned and/or had access to American Leather's confidential business information and trade secrets as described in detail above due to its relationship with American Leather. This information constitutes trade secrets under the Texas Uniform Trade Secrets Act, Civil Practice & Remedies Code § 134A.002, *et seq.*

63.     American Leather derives independent economic value from the fact that its trade secrets are not generally known to or readily ascertainable by the direct public or other persons who can obtain economic value from their disclosure or use.

64.     The trade secrets and confidential information possessed by Ultra-Mek were communicated to it in trust and confidence in connection with their relationship with Plaintiffs.

65.     American Leather has taken reasonable steps to protect its trade secrets and confidential information, including but not limited to entering into nondisclosure agreements with its employees and restricting access to such information.

66.     Ultra-Mek has improperly used, disclosed, and/or misappropriated the trade secrets and confidential information of American Leather in disclosing and selling unauthorized derivatives of the Tiffany Convertible Mechanism in violation of the Texas Uniform Trade Secrets Act. Ultra-Mek acted with a willful, wanton, and/or reckless disregard of American Leather's rights in using, disclosing, and selling products that incorporate and/or are based on American Leather's trade secrets and confidential information.

18

67.    Ultra-Mek obtained American Leather's trade secrets by improper means, including, but not limited to, breach of a confidential relationship or other duty to maintain secrecy or limit the use of American Leather's trade secrets and confidential information.

68.    Ultra-Mek's improper use and/or disclosure of American Leather's trade secrets and confidential information has caused American Leather actual damage, including, but not limited to, business lost to American Leather and lost profits, and will continue to cause irreparable harm to American Leather for which legal damages are not sufficient.

69.    If not immediately enjoined by way of temporary and permanent injunctive relief, Ultra-Mek will continue to use and misappropriate American Leather's trade secrets and confidential information, and there is no adequate remedy at law for such irreparable injury.

70.    American Leather is entitled to its attorneys' fees for this willful misappropriation by Ultra-Mek in this case.

## COUNT FIVE: COMMON LAW MISAPPROPRIATION

71.    Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

72.    American Leather and Tiffany created the Tiffany Convertible Mechanism and derivations thereof through extensive time, labor, skill, and money.

73.    American Leather also worked with Ultra-Mek to create additional derivations and improvement on the Tiffany Convertible Mechanism, with American Leather contributing extensive time, labor, skill, and money. Ultra-Mek assigned its rights in those derivatives as demonstrated with the '628 and '034 Patents.

74.    Ultra-Mek has sold and is now selling derivations of the Tiffany Convertible Mechanism to American Leather's competitors, thereby providing American Leather's

19

competitors with a special advantage in competition with American Leather because they have not been burdened with the development expense incurred by American Leather.

75.     Through Ultra-Mek's actions, American Leather and Tiffany have been commercially damaged.

## COUNT SIX: UNJUST ENRICHMENT

76.     Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

77.     Ultra-Mek has misappropriated American Leather's trade secrets, confidential information, and work product, and has used such trade secrets, confidential information, and work product to compete unfairly with Plaintiffs, thereby causing harm to Plaintiffs.

78.     This misuse of American Leather's trade secrets, confidential information, and work product without consent or approval has conferred a substantial benefit upon Ultra-Mek.

79.     These actions were wrongful and done in a manner to harm Plaintiffs and have resulted and will continue to result in the unjust enrichment of Ultra-Mek at Plaintiffs' expense.

80.     Because Ultra-Mek has been unjustly enriched by its improper actions, Plaintiffs are entitled to disgorgement of any and all business profits, earnings, wages, commissions, or other income, value, or benefit by Ultra-Mek from its improper actions.

## COUNT SEVEN: CONSTRUCTIVE FRAUD

81.     Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

82.     A relationship of trust and confidence existed between the Parties by way of, at the least, the Agreement.

83. Ultra-Mek failed to act in good faith with respect to the transaction between the Parties by failing to acknowledge ownership of derivatives of the Tiffany Convertible Mechanism and assign rights to such derivatives to American Leather.

84. Ultra-Mek has taken advantage of its relationship of trust and confidence with Plaintiffs in order to confer a benefit on itself and to cause harm to American Leather and/or Tiffany by, among other things, filing for and obtaining patents in its own name for derivatives of the Tiffany Convertible Mechanism, improperly disclosing and making sales of derivatives of the Tiffany Convertible Mechanism, and refusing to acknowledge American Leather and/or Tiffany's ownership of derivatives of the Tiffany Convertible Mechanism.

85. American Leather and Tiffany have been damaged by Ultra-Mek's constructive fraud in such amount to be more fully demonstrated at trial.

86. Ultra-Mek's actions were done intentionally, with full knowledge that Ultra-Mek's actions violated a fiduciary relationship, thereby entitling American Leather and Tiffany to punitive damages.

## COUNT EIGHT: CONVERSION

87. Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

88. Plaintiffs own or have proprietary interests in the Tiffany Convertible Mechanism and derivatives thereof that Ultra-Mek is causing to be disclosed, used, and sold in violation of Plaintiffs' property rights.

89. Ultra-Mek is using derivations of the Tiffany Convertible Mechanism in a manner that exceeds the permission granted by the Agreement.

21

90.     Ultra-Mek's marketing and sale of the derivatives of the Tiffany Convertible Mechanism constitutes an unauthorized assumption and exercise of the right of ownership.

91.     Ultra-Mek is thereby liable for conversion, entitling Plaintiffs to damages in an amount to be proven at trial, including damages for loss of use.

## COUNT NINTH: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

92.     Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

93.     There was a reasonable probability that American Leather would have entered into contractual relationships with purchasers for the sale of Comfort Sleeper™ products but for the actions of Ultra-Mek as described herein.

94.     Ultra-Mek has engaged and is engaging in independent tortious and unlawful conduct that is preventing American Leather from entering into contractual relationships with purchasers for the Comfort Sleeper™ products. Ultra-Mek's conduct includes, without limitation, breach of contract, misappropriation of trade secrets, common law misappropriation, and conversion, by and through Ultra-Mek's disclosure and sale of the Unauthorized Comfort Sleeper Mechanism and Ultra-Mek's refusal to acknowledge that American Leather was the rightful owner of the Unauthorized Comfort Sleeper Derivatives under the Agreement.

95.     Ultra-Mek lacked privilege or justification for such actions and engaged in such actions and continues to engage in such actions with a conscious desire to prevent American Leather from entering into contractual relationships with purchasers for the sale of Comfort Sleeper™ products or that Ultra-Mek knew its interference was certain or substantially certain to occur as a result of its conduct.

96.     American Leather was actually harmed and damaged by Ultra-Mek's interference.

## COUNT TEN: APPLICATION FOR PERMANENT AND MANDATORY INJUNCTIVE RELIEF

97.    Each of the foregoing paragraphs is incorporated and reasserted herein by reference.

98.    Plaintiffs seek a preliminary injunction enjoining Ultra-Mek from disclosing or selling any derivative of the Tiffany Convertible Mechanism or any of its component parts to any person, company, or entity other that Tiffany or American Leather in accordance with the Agreement.

99.    Plaintiffs seek a permanent injunction against Ultra-Mek to enjoin Ultra-Mek from disclosing the Tiffany Convertible Mechanism, any derivations thereof, or any of its component parts to any person, company, or entity other than Tiffany or American Leather in accordance with the Agreement.

100.    Plaintiffs seek a permanent injunction against Ultra-Mek to enjoin Ultra-Mek from selling the Tiffany Convertible Mechanism, any derivations thereof, or any of its component parts to any person, company, or entity other than Tiffany or American Leather in accordance with the Agreement.

101.    Plaintiffs seek a permanent injunction against Ultra-Mek to enjoin Ultra-Mek from interfering with any valid prospective or existing contractual relations of Plaintiffs.

102.    Plaintiffs seek a mandatory injunction and/or specific performance requiring that Ultra-Mek assign all right, title and interest in the Ultra-Mek Patent Properties to American Leather and/or Tiffany. Plaintiff's further and/or alternatively request the imposition of a constructive trust over the Ultra-Mek Patent Properties wherein the sole duty of Ultra-Mek as trustee is the assignment of ownership of the Ultra-Mek Patent Properties to American Leather and/or Tiffany.

23

103. Plaintiffs have no adequate remedy at law because the Tiffany Convertible Mechanism and derivations thereof are unique and represent to the public the identity, reputation and goodwill of Plaintiffs' products. Certain damages caused by Defendant's acts may not be susceptible to any ready or precise calculation because such damages include lost profits, lost business opportunities, loss of goodwill, and the impairment of the integrity of Plaintiffs' proprietary products. Moreover, for so long as Ultra-Mek owns the Ultra-Mek Patent Properties it may be able to assert exclusive rights in Tiffany Convertible Mechanism derivatives. Thus, monetary damages alone cannot fully compensate Plaintiffs for Ultra-Mek's misconduct.

104. Ultra-Mek's conduct is causing ongoing financial injury to Plaintiffs in the form of lost business, is unjustly enriching Defendant at Plaintiffs' expense, and is causing Plaintiffs irreparable harm, entitling Plaintiffs to compensatory damages, an accounting and injunctive relief.

## V.
## JURY DEMAND

105. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, American Leather demands a trial by jury on any issues so triable.

## VI.
## PRAYER

WHEREFORE PLAINTIFFS PRAY FOR JUDGMENT AS FOLLOWS:

106. That the '628 Patent is valid and infringed by Ultra-Mek and that Ultra-Mek's infringement has been willful.

107. That Ultra-Mek, its officers, agents, co-conspirators, servants, affiliates, employees, parent and subsidiary corporations, attorneys and representatives, and all those in

privity or acting in concert or participation with Ultra-Mek be preliminarily and permanently enjoined and restrained from directly or indirectly:

      a.   Disclosing, using, or selling the Tiffany Convertible Mechanism, any derivations thereof or any of its component parts to any person, company, or entity other than Tiffany or American Leather in accordance with the Agreement; and

      b.   Directly, indirectly or contributorily infringing the '628 Patent, and from inducing, aiding, causing or materially contributing to any such infringement.

108.   For an order that Ultra-Mek pay to American Leather such damages as American Leather sustains as a consequence of Ultra-Mek's infringement, including profits on all sales of Ultra-Mek's infringing products, interest, attorneys' fees, costs, and exemplary damages for wanton, malicious, and willful conduct.

109.   That this case be declared exceptional in view of Ultra-Mek's willful infringement and that American Leather be awarded treble damages, its attorneys' fees, and costs.

110.   That the Court impose a constructive trust on the Ultra-Mek Patent Properties until such time as the Ultra-Mek Patent Properties are transferred to American Leather and/or Tiffany;

111.   That the Court award Plaintiffs a mandatory injunction and/or specific performance and/or requiring the assignment of the Ultra-Mek Patent Properties to American Leather and/or Tiffany;

112.   That an accounting be ordered and Plaintiffs be awarded all gains, profits and advantages derived by Ultra-Mek from its wrongful acts, and that the amount of any accounting be trebled to the extent allowed by law.

113.    That Ultra-Mek be required to pay all of Plaintiffs' litigation expenses, including reasonable attorneys' fees and costs pursuant to, at the least, the Texas Uniform Trade Secrets Act.

114.    That the Court grant Plaintiffs pre- and post-judgment interest.

115.    That the Court grant Plaintiffs any and such other relief as it deems just and proper.

Respectfully submitted,

By: /s/ Jeffrey S. Lowenstein
        Jeffrey S. Lowenstein
        State Bar No. 24007574
        Wendy A. Duprey
        State Bar No. 24050543

BELL NUNNALLY & MARTIN LLP
3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204
Telephone: (214) 740-1410
Facsimile:  (214) 740-5710
E-mail:  jeffl@bellnunnally.com
E-mail:  wendyd@bellnunnally.com

**ATTORNEYS FOR PLAINTIFF**
**AMERICAN LEATHER OPERATIONS, LLC,**


By: /s/ William R. Towns
        William R. Towns
        State Bar No. 20158200

NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP
1000 Louisiana Street
Fifty-Third Floor
Houston, Texas 77002
Telephone: (713) 571-3400
Facsimile:  (713) 456-2836
E-mail:  bill.towns@novakdruce.com

**ATTORNEYS FOR PLAINTIFF**
**TIFFANY AND TIFFANY DESIGNERS, INC.**

26

**OF COUNSEL:**

Jacob S. Wharton (motion for admission *pro hac vice* to be filed)
David R. Crowe (motion for admission *pro hac vice* to be filed)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, North Carolina 27101
Telephone:  (336) 747-6609
Facsimile:  (336) 726-6986
E-mail:  JWharton@wcsr.com
E-mail:  DCrowe@wcsr.com

**ATTORNEYS FOR PLAINTIFF**
**AMERICAN LEATHER OPERATIONS, LLC**


Jeffrey L. Eichen (motion for admission *pro hac vice* to be filed)
NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP
1007 North Orange Street
Ninth Floor
Wilmington, Delaware 19801
Telephone:  (302) 888-6304
Facsimile:  (302) 658-5614
E-mail:  Jeff.Eichen@novakdruce.com

**ATTORNEYS FOR PLAINTIFF**
**TIFFANY & TIFFANY DESIGNERS, INC.**

1507170_1.DOC